# THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ARTHUR GOODMAN | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| | ) |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| ROLLING FRITO-LAY SALES, LP. | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

This is a proceeding for reinstatement and damages to redress the deprivation of rights secured to the plaintiff Arthur Goodman, ("Goodman") by Section 7(b), 29 U.S.C. § 626(b), of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA"), which incorporates by reference Section 16(b), 29 U.S.C. § 216(b), of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq.

## JURISDICTION

1.

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1337, and other applicable laws.

## VENUE

2.

Venue is proper in this district under 28 U.S.C. § 1391(b)-(c) (2018) because all the facts and omissions pursuant to this action occurred within the Northern District of Georgia.

3.

Rolling Frito-Lay Sales, LP. ("Frito-Lay") is a foreign limited partnership with its principal office address located at Frito-Lay, 7701 Legacy Drive, Plano, TX, 75024.

4.

Frito-Lay regularly conducts business within this State and District.

5.

Frito-Lay is subject to the jurisdiction of this Court.

6.

Goodman resides in the State of Georgia and the Northern District of Georgia.

7.

Goodman is subject to the jurisdiction of this Court.

PARTIES

8.

At all times during his employment with Frito-Lay and after, Goodman was a citizen of the United States of America.

9.

From June 5, 2006, until October 6, 2017, Goodman was an "employee" of Frito-Lay within the meaning defined by ADEA.

10.

Frito-Lay is an "employer" within the meaning defined by ADEA.

11.

From June 5, 2006, and continuing, Frito-Lay had twenty or more employees.

12.

From March 1, 2017, and continuingly, Frito-Lay engaged in industries and activities affecting interstate commerce.

13.

Frito-Lay may be served by delivering a copy of the Summons and Complaint to CT Corporation System, 289 S Culver St, Lawrenceville, GA, 30046.

14.

Goodman's race as black.

15.

At all times during employment with Frito-Lay, Goodman was over the age of 40 years old.

16.

Scott Lanier ("Lanier") was a Supervisor at Frito-Lay.

17.

Lanier was Goodman's supervisor during his employment at Frito-Lay.

18.

Lanier is Frito-Lay's agent for ADEA purposes.

19.

David Green ("Green"), is the Region Operations Director (ROD) for the Southeast Region.

20.

Green was Lanier's supervisor during his employment at Frito-Lay.

21.

Green is Frito-Lay's agent for ADEA purposes.

22.

Caitlin Porter ("Porter"), is the Human Resources Director for the Southeast Region.

23.

Porter delegated authority to supervise Goodman to Green and Lanier.

24.

Porter is Frito-Lay's agent for ADEA purposes.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

25.

On or about April 4, 2018, Goodman filed Charge of Discrimination number 410-2018-04694 with the Atlanta District Office of the Equal Employment Opportunity Commission ("EEOC") on basis that Frito-Lay unlawfully discriminated against him because of his race, color, age, and disability and for retaliating against him for opposing employment practices made unlawful by the ADEA.  See  Plaintiff's Exhibit A.

26.

On March 12, 2021, the EEOC electronically mailed a Notice of Right to Sue to Goodman. See Plaintiff's Exhibit B.

## FACTUAL BACKGROUND

27.

On or about June 5, 2006, Goodman began his employment with the Frito-Lay.

28.

Goodman became certified as a Powered Industrial Truck trainer in 2011.

29.

In 2012, Goodman became certified as LSS Kaizen Leader and Site Acceleration Labor point. As well as promoted to Senior Resource.

30.

On or about June 14, 2013, Goodman became certified as Continuous Improvement Master Trainer.

31.

Goodman received positive PDR annually through 2014.

32.

In 2014, Goodman applied for a Zone Operations position that was posted in the Facility that he was currently working at.

33.

Goodman was interviewed for the position by David Green, Regions Operations Director.

34.

During the interview, Green told Goodman "It wasn't his turn to be promoted" and offered no reasons for rescinding his application.

35.

The position was awarded to Gary Scott Lanier who was a 25-year District Sales Leader and had no previous operations experience nor training.

36.

In April of 2015, Goodman became certified as Regional Technical Point.

37.

Reviews for 2015 and 2016 begun to be unfavorable under the administration of Scott Lanier and David Green.

38.

Goodman began to discuss labor performance with manager Scott Lanier in 2015 when there was a dynamic shift in the team.

39.

There had been 7 team members to transition through retirement, transfer or leave for a better opportunity.

40.

There became a huge void which caused a rapid decline in team performance.

41.

This in turn caused a major impact on the ability to service the sales team with the same level of accuracy and efficiency.

42.

When Goodman brought this to the attention of Lanier, he became even less engaged in the day-to-day operations.

43.

Goodman suggested to Lanier that there be a meeting to game plan around a course of correction he dismissed it.

44.

Goodman would work 12 -14 hours per day while Lanier was gone in 7-8 hours per day offering no assistance in building the team.

45.

In 2016, There was an intervention by a Sr. Manager, Joe Rossi.

46.

Rossi started to work with Lanier on how to manage a distribution center.

47.

He would make daily trips from his office to Goodman's facility to have hands on training with Lanier and Goodman.

48.

Rossi told Lanier that he should make Goodman do everything that the team members should be doing.

49.

Rossi would tell Lanier to "make Art get that spill, let Art clean around that trash compactor."

50.

Lanier in turn would make a joke out of it and say, "let the black guy do it" or say, "that's a job for a black guy."

51.

Mr. Rossi was instrumental in in transferring a young white male, Andrew Yerkes to the South Atlanta DC to learn the operation manager's position to replace Goodman.

52.

Yerkes was coached by Lanier to believe that Goodman was incapable and no longer effective as a manager.

53.

He was told that he would be next in line for a promotion to a Zone Operations Manager's role when Lanier retired.

54.

Lanier had instructed Yerkes to make decisions with team members that directly affected areas of the business that Goodman was being held accountable for such as for like staffing, labor, crewing and overtime.

55.

Goodman asked Lanier to set up a meeting for the three of them so that we could establish clear boundaries around each of our positions and responsibilities.

56.

However, the meeting was never scheduled, and Yerkes and Goodman's relationship was strained until Yerkes transferred to another position in the company.

57.

In November of 2016, there was another young black male, Charles Hall (CJ) hired as a (FOM) Facility Operations Manager.

58.

Hall was also told that he was next in line as Zone Operations Manager when Lanier retired.

59.

Hall was told that Goodman was the reason the performance was down and to not give Goodman and responsibilities.

60.

Lanier told Hall that all of the sales team should come to him with any questions or concerns and Goodman should not be involved in any of the critical communication regarding the business.

61.

Lanier would often belittle and disrespect Goodman in front of Hall.

62.

One instance was when Lanier was speaking with two sales managers, Jamie Davis and Kyle Butler.

63.

The three were planning a sales initiative and both Hall and Goodman began to offer some input that would directly impact the success of the project.

64.

When Goodman began to speak, he could not complete his sentence because Lanier abruptly cut him off and waved him away.

65.

Another occasion was when Lanier, Hall and Goodman were meeting in the conference room. Goodman asked a question and Lanier said, "What are you some kind of dumb ass?"

66.

Goodman responded, "it's a wonder I can remember anything being under the constant stress you are putting me under."

67.

Lanier would announce 3 or 4 times a week that he was a redneck.

68.

Lanier boasted about the fact that where he was from, they just made people disappear and knew how to handle blacks.

69.

Lanier told Goodman that they would take blacks to the river and put a block around their neck or just put some dope in the car to set them up.

70.

Lanier told Goodman that he had told Green that he knew how to keep some little black kids from trespassing on the premises. He would just put a 270 (a high-powered rifle for big game) through their heads.

71.

Lanier said "Ol' David just laughed and told me I'd be careful who I said that to." to which Lanier replied, "I know my audience."

72.

June 13, 2017, Goodman filed a report with a third-party reporting service, Speak Up, that is provided by the company.

73.

Goodman was asked to stay home from the office until everything had been resolved.

74.

After the investigation, Lanier was terminated on or around June 30, 2017.

75.

Porter and Green asked Goodman to come back to the region office to discuss what his plans were for the future.

76.

Porter and Green suggested that he should retire because he was 55-years old.

77.

Goodman informed them he had no desire to retire at that time.

78.

July 10, 2017, Goodman was placed on a Performance Improvement Plan.

79.

October 6, 2017, Goodman was terminated due to not meeting performance objectives.

80.

Although Goodman was terminated, Frito- Lay allowed Goodman to receive paid leave through December 31, 2017.

81.

Frito-Lay willfully discriminated against Goodman on account of age in violation of Section 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1), with respect to its decision to terminate Goodman from employment.

DAMAGES

82.

As a direct and proximate consequence of Frito-Lay's unlawful and discriminatory employment policies and practices, plaintiff has suffered a loss of income, including past and future salary, full pension benefits, and other company-sponsored benefits.

## COUNT ONE: AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")

83.

Plaintiff incorporates paragraphs 1 through 82 by reference as if each were fully set forth therein.

84.

Frito-Lay subjecting Goodman to ongoing age discrimination and termination constitutes unlawful discrimination on the basis of Goodman's age in violation of the ADEA.

85.

Frito-Lay willfully and wantonly disregarded Goodman's rights protected by law and subjected him to discrimination in bad faith.

86.

The effects of the conduct complained herein have deprived Goodman of an equal employment opportunity, and to otherwise adversely affect his status as an employee because of his age.

87.

As a direct and proximate result of Frito-Lay's violation of the ADEA, Goodman has been made victim of acts that have adversely affected his psychological and economic well-being.

88.

Accordingly, Goodman is entitled to both equitable and monetary relief, including but not limited to, back pay, front pay, compensatory damages, attorney's fees, and costs of this action.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a TRIAL BY JURY and, the following relief be granted:

A. For a money judgment representing compensatory damages, including lost wages, and all other sums of money, including retirement benefits and other employment benefits, together with interest on said amounts;

B. For a money judgment representing liquidated damages for defendant's willful violations of the Age Discrimination in Employment Act;

C. For a money judgment representing prejudgment interest;

D. That the Court retain jurisdiction over this action until the defendant has fully complied with the Orders of this Court and that the Court require the defendant to file such reports as may be necessary to supervise such compliance;

E. For the costs of suit, including an award of reasonable attorneys' fees pursuant to 29U.S.C. §§ 626(b) and § 216(b); and

F. For such other and further relief as may be just and proper.

Respectfully submitted this 10th day of 10 June 2021.

/S/__*Anthony Dawkins*____,
Anthony Dawkins
GA Bar No.: 157904

MORGAN & MORGAN
191 Peachtree Street, N.E.
Suite 4200
Atlanta, GA 30303
(404) 965-1872 phone        *Attorney*
(404) 720-3839 fax            *for Goodman*
adawkins@forthepeople.com